JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Paul Ferruzzi

**(b)** County of Residence of First Listed Plaintiff   Montgomery County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** ~~Attorneys~~ *(Firm Name, Address, and Telephone Number)*
Daniel S. Orlow, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

### DEFENDANTS

Pond Lehocky, LLP
Pond Lehocky Giordano, LLP

County of Residence of First Listed Defendant   Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12101, et seq.; 43 Pa. Stat. § 951, et seq.; Phila. Code § 9-1100, et seq.; 29 U.S.C. § 201, et seq.; 29 U.S.C. § 2601, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against because of his disability and his complaints about illegal overtime practices.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   4/13/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Hatboro, PA _____

Address of Defendant: _____ 2005 Market Street, Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____ 2005 Market Street, Philadelphia, PA 19103 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/13/2022 _____   _____   311702

*Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
*(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Daniel S. Orlow _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 04/13/2022 _____   _____   311702

*Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Paul Ferruzzi | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Pond Lehocky, LLP, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( X )

| | | |
|---|---|---|
| 4/13/2022 | | Plaintiff, Paul Ferruzzi |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | orlow@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____
               :

Plaintiff,               :
               :

    **PAUL FERRUZZI**       :
    **Hatboro, PA**         :    Case No.
               :

    v.               :
               :

Defendant,           :    **JURY TRIAL DEMANDED**
               :

    **POND LEHOCKY, LLP**   :
    **Philadelphia, PA**      :
               :

    **POND LEHOCKY GIORDANO, LLP**  :
    **Philadelphia, PA**      :
_____:

**CIVIL ACTION COMPLAINT**

**I.**    **INTRODUCTION**

Plaintiff, Paul Ferruzzi, brings this action against his former employer, Pond Lehocky, for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, *et seq.* ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq.* ("PFPO"), the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

Plaintiff was hired by Defendants in 2007 and demonstrated dedication and consistently excellent performance throughout thirteen (13) years of employment. In November 2019, Plaintiff was diagnosed with testicular cancer. As a result, Plaintiff required surgical removal of a cancerous tumor and ongoing surveillance treatment thereafter, which required modifications to his work schedule for routine testing and treatment. Despite Plaintiff's stellar track record

over thirteen (13) years, Plaintiff was terminated only five (5) months later in April 2020 under the guise of a reduction-in-force and ambiguous criticisms of his job performance.  Merely one (1) week prior to his termination, Plaintiff had submitted complaints to Defendants' upper management that staff members had been working compensable overtime hours, but were not clocking-in for or recording those hours due to a fear of being penalized for working overtime.

Plaintiff was unlawfully terminated because of his disability (testicular cancer), his requests for reasonable accommodations in connection with the same, and his reports to upper management that employees were not clocked-in during compensable overtime hours.  Plaintiff seeks damages, including back-pay, front-pay, compensatory, liquidated, punitive, attorneys' fees and costs, and all other relief that this Court deems appropriate.

## II.    PARTIES

1.    Plaintiff Paul Ferruzzi is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Hatboro, PA.

2.    Defendant Pond Lehocky, LLP is organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 2005 Market Street, Philadelphia, PA 19103.

3.    Defendant Pond Lehocky Giordano, LLP is organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 2005 Market Street, Philadelphia, PA 19103.

4.    The operations of Defendants are substantively integrated and consolidated. Without limitation, and by way of example:

    a.    Defendants share common leadership;

b.       Defendants collectively and individually do business under the trade name "Pond Lehocky";

c.       Defendants have each issued Plaintiff documentation referring to them individually as Plaintiff's employer;

d.       Defendants share a common principal place of business located at 2005 Market Street, Philadelphia, PA 19103;

e.       Defendants issue press releases and other marketing-related materials that refer to Pond Lehocky as a single enterprise of which Defendants are each a part;

5.       At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

6.       At all times material hereto, Defendants were each an employer of Plaintiff (both individually and collectively) within the meaning of the statutes which form the basis of this matter.

7.       At all times material hereto, Defendants employed more than fifteen (15) people.

8.       At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

## III.   <u>JURISDICTION AND VENUE</u>

9.       The causes of action set forth in this Complaint arise under the ADA, the PHRA, the PFPO, the FLSA, and the FMLA.

10.      The District Court has subject matter jurisdiction over Counts I, IV, and V pursuant to 28 U.S.C. § 1331.

3

11.     The District Court has supplemental jurisdiction over Counts II and III pursuant to 28 U.S.C. § 1367.

12.     Venue is proper under 28 U.S.C. § 1391(b).

13.     On or about May 18, 2020, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission (PHRC), complaining of the various acts of discrimination and retaliation alleged herein.  Plaintiff's Complaint of Discrimination was dual-filed with the Equal Employment Opportunity Commission.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the May 18, 2020 Complaint of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

14.     On March 25, 2022, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue.  Attached hereto as "Exhibit B" is a true and correct copy of that notice.

15.     On January 18, 2022, the Pennsylvania Human Relations Commission informed Plaintiff that more than one (1) year had passed since the filing of his Complaint of Discrimination, advising him that he had the right to bring an action in the appropriate Court of Common Pleas based on the alleged violations of the PHRA.

16.     Plaintiff is filing this complaint within ninety (90) days from his receipt of the EEOC's Notice of Dismissal and Right to Sue.

17.     Plaintiff has fully complied with all administrative pre-requisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

18.     Plaintiff was hired by Defendants in 2007.

19.     Plaintiff demonstrated dedication to Defendants and exceptional performance of his job duties and responsibilities.

20.     Plaintiff was not once subjected to any disciplinary action throughout his almost thirteen (13) years of employment with Defendants.

21.     At the time of his termination, Plaintiff held the position of Director of Worker's Compensation and reported to Jackie Donovan, Chief Operations Office.

22.     Donovan reported to Samuel Pond, Defendants' Managing Partner.

23.     In or about 2013, Plaintiff was diagnosed with testicular cancer.

24.     Plaintiff's 2013 diagnosis of testicular cancer required him to undergo surgery.

25.     In or about August 2013, Plaintiff informed Donovan of his testicular cancer diagnosis and that he expected to be out of work for two (2) weeks in connection with his surgery and corresponding recovery.

26.     On or about August 19, 2013, Plaintiff went out of work on a medical leave of absence.

27.     On or about August 20, 2013, Plaintiff underwent surgery in connection with his testicular cancer diagnosis.

28.     On or about August 30, 2013, Plaintiff returned to work from his medical leave of absence.

29.     On or about November 12, 2019, Plaintiff learned that he had developed another cancerous tumor related to his previous diagnosis of testicular cancer from 2013.

30.     Plaintiff's testicular cancer impaired the normal growth of cells in his body.

31.     Plaintiff required another surgery to remove the tumor that he learned of in 2019.

32.     On or about November 12, 2019, Plaintiff informed Donovan and Amber Adams, Human Resources, of the newly discovered tumor.

33.     Plaintiff informed Donovan and Adams that the tumor needed to be removed before it got worse, and that he required another surgery as a result.

34.     Plaintiff informed Donovan and Adams that prior to undergoing surgery he planned to obtain a second opinion to ensure that surgery was necessary.

35.     On November 19, 2019, Plaintiff received a second opinion confirming that complete surgical removal of the tumor was required.  Plaintiff informed Donovan of the same.

36.     On November 25, 2019, Plaintiff went out of work on a medical leave of absence.

37.     On November 25, 2019, Plaintiff underwent surgery to remove the newly discovered tumor.

38.     On December 9, 2019, Plaintiff returned to work from his medical leave of absence.

39.     Following his return to work, Plaintiff had to leave work early and/or arrive to work late on several occasions due to testing and doctors' appointments.

40.     Defendants were aware of  Plaintiff's need to leave work early and/or arrive to work late on certain days due to testing and doctors' appointments related to his cancer diagnosis.

41.     Following his return to work, Plaintiff had multiple conversations with Donovan and Adams about his need for additional tests and medical treatment related to his cancer diagnosis.

42.     Plaintiff informed Donovan and Adams that he would be receiving surveillance treatment in connection with his diagnosis moving forward.

43.     Plaintiff required surveillance treatment following his surgery due to the propensity of his testicular cancer to re-occur in the future.

44.     Plaintiff explained to Donovan and Adams that the surveillance treatment he would be receiving consisted of frequent blood tests, MRI/CT scans, and check-ups with oncologists throughout the five (5) years following his second surgery.

45.     Plaintiff informed Donovan and Adams that he would need to request time off for testing and treatments.

46.     On or about April 14, 2020, Plaintiff advised Donovan that staff members were working compensable overtime hours, but not clocking-in for those hours.

47.     Specifically, in an email dated April 14, 2020, Plaintiff wrote to Donovan and, in relevant part, stated "…several staff are working not clocked in to make ends meet with their work. They won't clock in for fear of penalty for OT but also need to get work done…"

48.     On April 17, 2020, in a phone call with Donovan and Jennifer Heinz, Chief Human Resources Officer, Defendants terminated Plaintiff's employment, effective immediately.

49.     Prior to being informed of his termination, Plaintiff had no indication that his job was in jeopardy.

50.     The stated reason for Plaintiff's termination was that Donovan and Heinz felt that Plaintiff did not support them and that it was time to "part ways."

51.     On April 29, 2020, in an email to Heinz, Plaintiff complained that he was terminated because of his disability, including being diagnosed with cancer twice during his employment and needing to alter his schedule for medical appointments and diagnostic testing.

52. On May 1, 2020, in an email from Heinz, she unjustly criticized Plaintiff and made false statements about his performance. She stated that Plaintiff's "visible disregard for decisions being made by [his] superiors, disrespect toward executive team members and lack of support of the vision and goals of the Firm are in fact the reasons for [his] termination, again all of which was explained to [him] on … on April 17, 2020."

53. Defendants offered a severance agreement to Plaintiff in exchange for a release of all claims against it, which stated that Plaintiff was terminated as part of a reduction in force.

54. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA, PHRA, and PFPO.

55. At all relevant times, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

56. At all relevant times, Defendants regarded Plaintiff as a disabled person.

57. At all relevant times, Plaintiff had a recorded history of a disability of which Defendants were aware.

58. Plaintiff's disability (including his record thereof and Defendants' perception of him as a disabled person), his requests for reasonable accommodations in connection with his disability, and his reports to Defendants' upper management that employees were not clocked-in for compensable overtime hours were each motivating and/or determinative factors in Defendants' discriminatory and retaliatory treatment of him, including terminating his employment and failing to provide him reasonable accommodations for his disability.

59. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of

self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I
## <u>Americans with Disabilities Act (Title VII)</u>

60.     Plaintiff incorporates herein by reference the paragraphs set forth above as if set forth herein in their entirety.

61.     Defendants have violated the ADA by committing the foregoing acts of discrimination and retaliation.

62.     Defendants intentionally discriminated and retaliated against Plaintiff because of his disability, including his record thereof and Defendants' perception of him as a disabled person, and his requests for reasonable accommodations.

63.     Defendants violated the ADA by failing to provide Plaintiff with reasonable accommodations in connection with his disability.

64.     Defendants acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

65.     As a direct and proximate result of Defendants' violation of the ADA, including terminating Plaintiff's employment and failing to provide him with reasonable accommodations, Plaintiff has suffered the damages and losses set forth herein.

66.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

67.     No previous application has been made for the relief requested herein.

## COUNT II
## <u>Pennsylvania Human Relations Act (PHRA)</u>

68.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

69.     Defendants have violated the PHRA by committing the foregoing acts of discrimination and retaliation.

70.     Defendants intentionally discriminated and retaliated against Plaintiff because of his disability, including his record thereof and Defendants' perception of him as a disabled person, and his requests for reasonable accommodations.

71.     Defendants violated the PHRA by failing to provide Plaintiff with reasonable accommodations in connection with his disability.

72.     As a direct and proximate result of Defendants' violations of the PHRA, including terminating Plaintiff's employment and failing to provide him with reasonable accommodations, Plaintiff has suffered the damages and losses set forth herein.

73.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

74.     No previous application has been made for the relief requested herein.

**COUNT III**
**Philadelphia Fair Practices Ordinance (PFPO)**

75.     Plaintiff incorporates herein by reference the paragraphs set forth above as if set forth herein in their entirety.

76.     Defendants have violated the PFPO by committing the foregoing acts of discrimination and retaliation.

77.     Defendants intentionally discriminated and retaliated against Plaintiff because of his disability, including his record thereof and Defendants' perception of him as a disabled person, and his requests for reasonable accommodations.

78.     Defendants violated the PFPO by failing to provide Plaintiff with reasonable accommodations in connection with his disability.

79.     Defendants acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

80.     As a direct and proximate result of Defendants' violation of the PFPO, including terminating Plaintiff's employment and failing to provide him with reasonable accommodations, Plaintiff has suffered the damages and losses set forth herein.

81.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

No previous application has been made for the relief requested herein.

## COUNT IV
## Fair Labor Standards Act (FLSA)

82.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

83.     Defendants have violated the FLSA by committing the foregoing acts of retaliation.

84.     Defendants intentionally retaliated against Plaintiff because of his complaint that staff members were working compensable overtime hours, but were not clocking-in for the same out of fear of being penalized for working overtime.

11

85.     Defendants' violation of the FLSA was not carried out in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts of retaliation were not in violation of the FLSA. Defendants' violations of the FLSA accordingly warrant the imposition of liquidated damages.

86.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff has suffered the damages and losses set forth herein.

87.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

88.     No previous application has been made for the relief requested herein.

## COUNT V
## Family and Medical Leave Act (FMLA)

89.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

90.     At all relevant times, Defendants employed more than fifty (50) people within a seventy-five (75) mile radius of Plaintiff's workplace.

91.     Plaintiff had worked for Defendants for at least 1,250 hours in the twelve months period preceding his need for medical leave in 2019.

92.     Plaintiff's 2019 cancer diagnosis qualified as a "serious health condition" within the meaning of the FMLA.

93.     At the time of Plaintiff's termination, Plaintiff was eligible for leave under the FMLA.

94.     At all relevant times, Defendants were subject to the requirements of the FMLA.

95.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, including terminating his employment, Defendants violated the FMLA.

96.     Plaintiff's exercise of his FMLA rights was considered as a negative factor, and was a motivating and determinative factor in Defendants' conduct towards Plaintiff, including terminating his employment.

97.     Said violations were not in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA. Defendants' violations of the FMLA warrant the imposition of liquidated damages.

98.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory, retaliatory, and unlawful acts unless and until the Court grants the relief requested herein.

99.     No previous application has been made for the relief requested herein

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants:

a)      declaring the acts and practices complained of herein to be in violation of the ADA;

b)      declaring the acts and practices complained of herein to be in violation of the PHRA;

c)      declaring the acts and practices complained of herein to be in violation of the PFPO;

d)      declaring the acts and practices complained of herein to be in violation of the FLSA;

13

e)      declaring the acts and practice complained of herein to be in violate of the FMLA;

f)      enjoining and restraining permanently the violations alleged herein;

g)      awarding damages to Plaintiff for the past and future economic losses that he has suffered;

h)      awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

i)      awarding punitive damages to Plaintiff;

j)      awarding liquidated damages to Plaintiff pursuant to the FLSA and FMLA.

k)      awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

l)      granting such other and further relief as this Court deems appropriate.


**CONSOLE MATTIACCI LAW, LLC**


Dated: April 13, 2022      BY: _____

Daniel S. Orlow, Esq.
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676
Attorneys for Plaintiff, Paul Ferruzzi


14

# Exhibit A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

<u>COMPLAINT</u>

Received
MAY 18 2020
PA Human Relations Commission
Philadelphia Regional Office

COMPLAINANT:

PAUL FERRUZZI

v.

RESPONDENT:

POND LEHOCKY GIORDANO LLP

Docket No.  2019 04117

1. The Complainant herein is:

   Name:    Paul Ferruzzi

   Address: 

2. The Respondent herein is:

   Names:   Pond Lehocky Giordano LLP

   Address: 2005 Market Street. 3rd Floor
            Philadelphia, PA 19103

3. I. Paul Ferruzzi, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and retaliation for my complaints of disability discrimination and for seeking reasonable accommodations for my disability, as set forth below.

   <u>Discrimination and Retaliation</u>

   A. I specifically allege:

   [1]    I began working at Respondent on or about May 3, 2007.

[2]      I was employed at Respondent for almost thirteen (13) years.

[3]      I consistently performed my job duties in a highly competent manner, and received positive feedback.

[4]      I last held the position of Director of Worker's Compensation.

[5]      I last reported to Jackie Donovan, Chief Operations Officer. Donovan reported to Samuel Pond, Managing Partner.

[6]      I was the only disabled[1] employee reporting to Donovan.

[7]      In or about 2013, I was diagnosed with testicular cancer and learned that I required surgery.

[8]      In or about August 2013, I informed Donovan of my testicular cancer diagnosis and that I required surgery. I stated that I expected to be out of work for two (2) weeks in connection with my surgery and recovery.

[9]      On or about August 19, 2013, I went out of work on a medical leave of absence.

[10]     On or about August 20, 2013, I underwent surgery for my testicular cancer, to remove a tumor.

[11]     On or about August 30, 2013, I returned to work from my medical leave of absence.

[12]     On or about November 12, 2019, I learned that I had another tumor in connection with my testicular cancer, as I had had in 2013, that needed to be removed before it got worse, and that I required emergency surgery.

[13]     On or about November 12, 2019, I informed Donovan and Amber Adams, Human Resources, of my tumor that needed to be removed before it got worse, and that I

---

[1] References herein to an employee not having a disability are to the best of my knowledge.

  
required emergency surgery. I stated that I would be getting a second opinion to confirm that complete removal of the tumor was required and there were no other options.

[14]    On November 19, 2019, I received a second opinion that confirmed that complete removal of the tumor was required. I informed Donovan of the same.

[15]    On November 25, 2019, I went out of work on a medical leave of absence.

[16]    On November 25, 2019, I underwent surgery to remove the tumor.

[17]    While on my medical leave of absence, following my surgery, I worked from home.

[18]    On December 9, 2019, I returned to work in the office from my medical leave of absence.

[19]    I routinely had to leave work early or arrive to work late due to testing and doctors' appointments related to my disability.

[20]    Respondent was aware that I had to leave work early or arrive to work late on certain days due to testing and doctors' appointments related to my disability.

[21]    Each time I would be out of the office for testing and doctors' appointments related to my disability, I informed Donovan, Adams, and/or Jennifer Heinz, Chief Human Resources Officer, of the same.

[22]    I regularly had conversations with Donovan and Adams about my need for additional tests and medical treatment related to my disability. I informed them that my oncologists determined that I should have surveillance treatment, which requires frequent blood tests, MRI/CT scans, and check-ups with oncologists, throughout the next five (5) years. I informed them that I would start requesting time off of work for dates that I knew I needed

testing and treatments, and that I would do my best to undergo testing and treatments at times when my absence would not disturb the work day.

[23]     On April 17, 2020, in a phone call with Donovan and Jennifer Heinz, Chief Human Resources Officer, Respondent terminated my employment, effective immediately. Before the termination meeting, I had no indication that my job was in jeopardy. The stated reasons were that they felt that I did not support them and that it was time to part ways.

[24]     Respondent terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability and/or my taking medical leaves of absence for my disability.

[25]     Following my termination, Respondent sent an email to employees stating that I was no longer employed with Respondent and thanking me for my dedication to Respondent, Respondent's staff, and Respondent's clients.

[26]     On April 29, 2020, in an email to Heinz, I complained that I was terminated because of my medical condition, including being diagnosed with cancer twice during my employment with Respondent and needing to alter my schedule for medical appointments and diagnostic testing.

[27]     On May 1, 2020, in an email from Heinz, she unjustly criticized me and made false statements about my performance. She stated that my "visible disregard for decisions being made by [my] superiors, disrespect toward executive team members and lack of support of the vision and goals of the Firm are in fact the reasons for [my] termination, again all of which was explained to [me] on our phone call on April 17, 2020," which was false, and stated that my employment was terminated "for cause." This was false, as Respondent offered a severance

agreement to me, in exchange for a release of all claims against Respondent, which stated that I was terminated as part of a reduction in force.

[28]    Respondent unjustly criticized my performance and falsely stated that I was terminated for cause because of my complaints of disability discrimination.

[29]    I had no performance or disciplinary issues throughout my almost thirteen (13) years of service at Respondent.

[30]    I was provided with no opportunity to remain employed with Respondent.

[31]    I was the only employee, to my knowledge, notified of termination on April 17, 2020.

[32]    Respondent has assigned my job duties to Elizabeth Campoli, Worker's Compensation Manager. I was more qualified and experienced to perform my job duties than the nondisabled employee who did not request reasonable accommodations for a disability or take medical leaves of absence to whom Respondent assigned my job duties.

[33]    Respondent's disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

B.    Based on the aforementioned, I allege that Respondent has discriminated against me because of my disability (including history of and regarded as) and retaliated against me for my complaints of disability discrimination and for seeking reasonable accommodations for my disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq. ("PFPO").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices

in violation of:

    __X__        Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.

744, as amended) Section 5 Subsection(s): __(a); (d)__

    _____        Section 5.1 Subsection(s) _____

    _____        Section 5.2 Subsection(s) _____

    _____        Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

    __X__        **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.      The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

    procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

    complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

5/18/20

(Date Signed)          (Signature)    Paul Ferruzzi

# Exhibit B

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: **Paul Ferruzzi** | From: | **Philadelphia District Office**<br>**801 Market St ,Suite 1000**<br>**Philadelphia ,Pennsylvania ,19107** |
|---|---|---|

| EEOC Charge No.<br>**17F-2021-60018** | EEOC Representative<br>**Damon Johnson,**<br>**State, Local and Tribal Program Manager** | Telephone No.<br>**(267) 589-9722** |
|---|---|---|

#### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** \*of your receipt of this Notice.\*  Otherwise, your right to sue based on the above-numbered charge will be lost.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Karen McDonough,**
**Enforcement Manager**

March 25, 2022
*(Date Issued)*

cc:  For Respondent: POND LEHOCKY GIORDANO LLP
Jenna R Mathias, Esq.
436 Walnut Street, Wa01a
Philadelphia, PA 19106

For Charging Party:
Emily R Derstine Friesen, Esq.
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102